IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JENNIFER TABLER, f/k/a
JENNIFER BROWN                                                                            PLAINTIFF

v.                          CASE NO.          12-2221

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on February 12, 2010, alleging an onset date of January 26, 2010, due to plaintiff's back injury, arthritis, diabetes, spinal spondolythesis and bipolar condition (T. 168). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

January 25, 2011. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 38 years of age and possessed a high school education with some college. The Plaintiff had past relevant work ("PRW") experience as a facilitator for individuals with mental disabilities and a retail clerk (T. 168).

On February 22, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disc disease of the lumbar spine and diabetes mellitus did not meet or equal any Appendix 1 listing. T. 17. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work. T. 17. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as production worker/patcher, credit authorizer/call out operator, and interviewer/charge account clerk. T. 22.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The ALJ determined that the Plaintiff had the Residual Functional Capacity to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant is able to lift and carry 10 pounds occasionally and frequently less. She is able to sit for six hours and stand and walk for two hours, during an eight-hour workday. She can occasionally climb, balance, crawl, kneel, stoop and crouch and occasionally work overhead."

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The Plaintiff contends that the ALJ committed error because the RFC is not supported by the record. (ECF No. 6, p. 10-14). The Plaintiff claims that she became disabled on January 26, 2010 (T. 167) because of a back injury, arthritis, diabetes, spinal arthritis spondolythesis spondolosis deterioration and being bipolar. (T. 166). While the Plaintiff contends she is bipolar and received treatment at Harbor View Mercy Medical Hospital in 1999 (T. 179) the court has not been directed to any medical records in the file that support such a diagnosis. The Mental Diagnostic Evaluation performed by Dr. Shry in May 2010 diagnosed the Plaintiff with Mood

Disorder NOS, Personality Disorder NOS and a GAF of 60-71 (T. 296). The Psychiatric Review Technique performed by Dr. Woodson-Johnson in June 2010 made similar diagnosis and found her limitations to be Mild. (T. 308). There was no diagnosis of bipolar disorder. Dr. Woodson-Johnson's report was reviewed and affirmed by Dr. Etienne Mourot in July 2010. The court also notes that the Plaintiff's Diabetes Mallotus, according to her treating physician, was well controlled with medication. (T. 261, 265). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

If there was a "back injury" the court has not been directed to any medical records concerning the date or nature of the injury but it appears that the Plaintiff was performing her normal "stocking" duties on November 23, 2007 and woke up the next day "having back pain" . (T. 368). She was seen by Dr. Pettway on November 26, 2007 (T. 368) who noted a negative SLT but she saw Dr. Williams on the same day who noted a "dramatic positive straight leg" test. (T. 589). There does not appear to be a defining event that the Plaintiff can point to that caused her "disability" but it appears that the argument is that her DDD deteriorated to a point that she can no longer work.

The first medical record dealing with the Lumbar Spine is a CT scan from July 2000. The impression is impossible to read and this record cannot be considered by the court. (T. 330). The Plaintiff complains of back and leg pain as early as October 2001. (T. 378). A CT scan in

March 2002 showed "L4-5 disc is unremarkable, L5-6 disc also showing very minimal disc bulging but no herniation, and L6-S1 disc level shows diffuse bulging which is frequently seen with spondylolytic defect that is present in this patient at L6 level". (T. 331).

Another MRI was done in March 2009 which showed degenerative disc changes at L5-S1 with mild anterolisthesis and mild disc protrusion on the left side. (T. 328). Dr. Queeney, an orthopedic surgeon, reviewed all of the Plaintiff's MRI and did not recommend surgery and prescribed some antiinflamatory medications. (T. 413). The Plaintiff saw Dr. Standerfer, an orthopedic surgeon, in July 2009. Dr. Standerfer reviewed all of the Plaintiff existing MRI and found her condition was "consistent with Grade I[2] spondylolisthesis and associated spondylolysis". He did not observe any gross slippage or either flexion or extension" and found the pelvis, S1 joints and hip joints were normal. He also saw no destructive lesions nor evidence of discitis or osteomyelitis. (T. 326). Dr. Standerfer's Plan was to have the Plaintiff do PT, and increase her Neurontin[3] to 600 mg three times a day. (T. 259). Dr. Standerfer saw the Plaintiff again in November 2009 and noted that she was "responding well to her medication with satisfactory relief of her lower extremity pain" and that she was not "having much in the way of back pain at this time". He noted that her range of motion about the lumbar spine is "mildly

---

[2]The most common grading system for spondylolisthesis is the Meyerding grading system for severity of slip. The system categorizes severity based upon measurements on lateral X-ray of the distance from the posterior edge of the superior vertebral body to the posterior edge of the adjacent inferior vertebral body. This distance is then reported as a percentage of the total superior vertebral body length: Grade 1 is 0–25%; Grade 2 is 25–50%; Grade 3 is 50–75%;
Grade 4 is 75–100%.

[3]Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain.
http://www.drugs.com/search.php?searchterm=neurontin

limited in flexion secondary to pain but is, otherwise, unremarkable." (T. 322). At this time Dr. Standerfer told the Plaintiff that he would consider her a candidate for surgery "if she develops sufficiently increasing pain or paresthesias that it disrupts her lifestyle or her ability to do her job." He noted that "she does not have objective neurological impairment at this juncture and, for this reason, I would advise simple observation recognizing that if symptoms change, reassessment could be undertaken at a later date." (T. 323).

Rather than going back to see Dr. Standerfer or Dr. Queeney the Plaintiff filed for disability in February 2010 (T. 133) claiming an onset date of January 26, 2010. (T. 162). A Physical RFC assessment was performed by Dr. Bill Payne on April 14, 2010 finding that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand and/or walk and sit for 6 hours in an 8-hour workday. (T. 287). Dr. Payne's assessment was reviewed and affirmed by Dr. Hicks on July 26, 2010. (T. 312).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). Nonetheless, there are two exceptions to this general rule. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir.2000). Specifically, we will uphold the ALJ's decision to credit a one-time consultant and discount a treating physician's opinion "(1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (internal citations and quotations omitted). *Anderson v. Barnhart* 344 F.3d 809, 812 -813 (C.A.8 (Iowa),2003)

In this case the treating physician, Dr. Michael Miranda, provided a Medical Source Statement giving the opinion that the Plaintiff could only sit for 5 minutes and stand for less than five minutes at a time and could not tolerate any work during an 8 hour workday. (T. 608). He felt the Plaintiff could never lift even less than 10 pounds and could never twist, stoop, crouch/squat, climb stairs, or ladders. (T. 609). He also felt that she would have significant limitations on reaching, handling, or fingering and that she only had 5-10% strength in her hands fingers and arms. (T. 609).

The amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, consistency, specialization, and other factors. Generally, more weight is given to opinions of sources who have treated a claimant, and to those who are treating sources. *Duncan v. Barnhart* 368 F.3d 820, 823 (C.A.8 (Iowa),2004). The ALJ totally discounted the opinion of the Plaintiff's treating physician and stated his reasons for discounting the treating physician's opinion.

Dr. Queeney and Dr. Standerfer, who treated the Plaintiff in 2009 are specialist in their field. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527. Unfortunately no one obtained a PRFC Assessment from either specialist. In light of discounting the opinion of the treating physician and the divergence in his opinion and the non-examining consultive physician's the opinions of the orthopedic specialist becomes paramount.

If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to

clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). *See Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment.").

The court believes remand is necessary for the ALJ to further develop the record concerning the Plaintiff's Physical RFC. Therefore, on remand, the ALJ is directed to contact at least one of the plaintiff's treating orthopedic specialist and address interrogatories to that physician, asking him to review plaintiff's medical records during the relevant time period; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his/her opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this September 19, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE